IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

THOMAS MATTHEW RIEMER                                        PLAINTIFF


v.                          Civil No. 5:23-cv-05161-TLB-CDC



UNITED STATES MARSHALS SERVICE;
KARAS CORRECTIONAL HEALTH SERVICES;
SHERIFF JAY CANTRELL, Washington County,
Arkansas; and DEPUTY CODY REX                              DEFENDANTS


## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Thomas M. Riemer ("Riemer"), has filed this civil rights action under 42 U.S.C.

§ 1983 and *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

When he filed this case Riemer was being detained at the Washington County Detention Center

(WCDC).   Riemer is proceeding *pro se* and *in forma pauperis*.

Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L.

Brooks, United States District Judge, referred this case to the undersigned for the purpose of

making a Report and Recommendation.   The case is before the Court for on the Motion to Dismiss

filed by the United States Marshals Service ("USMS") (ECF No. 36) and the Motion for

Temporary Restraining Order (ECF No. 39) filed by Riemer.

### I.        BACKGROUND

The below facts are drawn from the Amended Complaint, the USMS's Motion to Dismiss,

and Riemer's Response.   (ECF Nos. 5, 36-37 & 43).   According to the allegations of the

1

Amended Complaint, Riemer was a federal prisoner being held in the WCDC.   (ECF No. 5 at 2).

On June 1, 2023, Riemer alleges Defendant Rex used excessive force against him causing injury

to his left shoulder.   *Id.* at 5.

Riemer was not seen or given any treatment until approximately a week later when an x-

ray of Riemer's shoulder was ordered.   (ECF No. 43).   The x-ray showed no damage to his bones.

(ECF No. 5 at 6).   Riemer agreed there was no damage to his bones but maintained there was soft

tissue injury which is not visible on an x-ray.   *Id.*

Riemer asserts that all further requests for medical care have been denied by Defendant

Karas Correctional Health Services.   (ECF No. 5 at 6).   Riemer says "[t]hey try to pass the [issue

of his medical care] to the USMS."   *Id.*   Both he and his public defender requested that he be

seen by an orthopedic surgeon.   (ECF No. 43 at 1).

Riemer pointed out his only access to medical care is through the Defendant Karas

Correctional Health Services or the USMS.   (ECF No. 5 at 6); (ECF No. 43 at 1).   Furthermore,

Riemer stated the USMS requires him to "prove 'need' to access proper medical care."   (ECF No.

43 at 1).   Riemer asserted this cannot be done by a detainee.   *Id.*

As relief, Riemer asks for proper medical care to restore his shoulder to a stable functional

condition.   (ECF No. 5 at 10).   He also requests compensatory and punitive damages.   *Id.*

With respect to the USMS, at the initial screening stage, the Court found that the USMS

was immune from a suit for damages.   (ECF No. 9—Report and Recommendation); (ECF No.

18—Order adopting Report and Recommendation).   However, it was noted that when prospective

injunctive relief is sought, sovereign immunity is waived under the Administrative Procedure Act

("APA"), 5 U.S.C. § 702.   Further, the Court found that Riemer had alleged the existence of

"continuing, present adverse effects."   *Id.*

After he filed this lawsuit, Riemer says he finally was seen by the facility provider who recommended that he be referred to an orthopedic surgeon.   (ECF No. 43 at 2).   According to Riemer, it was six months later when the USMS approved the referral.   *Id.*

The USMS indicates that on January 3, 2024, Riemer was taken to UAMS Health Orthopedics & Sports Medicine where he was seen by Dr. Navin Kilambi, an orthopedic surgeon.[1] (ECF No. 37 at 4).   On the same date, Dr. Kilambi ordered a CT.   *Id.*   The USMS approved the shoulder CT on January 12, 2024.   *Id.*   According to the USMS, "as evidenced by the approvals, the plaintiff is receiving appropriate, medically necessary care, and will continue to do so for as long as he is in USMS custody in accordance with USMS policies and procedures."   *Id.*

Riemer agrees he was seen but asserts that he was told his shoulder needed surgical repair. (ECF No. 43 at 2).   Dr. Kilambi recommended Dr. Wesley Cox to perform the highly specialized surgery.   *Id.*   Riemer indicates he is no longer at WCDC and has not received any direct medical care for his shoulder.[2]   *Id.*   Riemer indicates he is "forced to languish in perpetuity with no assurance of medical care."   *Id.*

## II.   THE MOTION TO DISMISS

### A.  Applicable Standard

The USMS's Motion to Dismiss is brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure.   Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move to

---

[1] The USMS did not submit the medical records.   However, they state the medical records can be provided at the Court's request for *in camera* review.   (ECF No. 37 at 4).

[2] Riemer appears to have been transferred on more than one occasion since he left the WCDC. (ECF No. 41—notice of transfer to Cimarron Correctional Facility, Cushing, Oklahoma); (ECF No. 47—notice of transfer to Geene County Justice Center in Springfield, Missouri).

dismiss based on lack of subject matter jurisdiction.   Fed. R. Civ. P. 12(b)(1).   The Plaintiff bears the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists.   *Moss v. United States,* 895 F.3d 1091, 1097 (8th Cir. 2018) (citation omitted).

"In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings."   *Croyle v. United States,* 908 F.3d 377, 380 (8th Cir. 2018) (quoting *Osborn v. United States,* 918 F.2d 724, 729 n. 6 (8th Cir. 1990)).   A facial attack challenges the sufficiency of the pleadings.   *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir. 1993). Despite the jurisdictional allegations of the pleadings, a factual attack challenges the existence of subject matter jurisdiction.   *Branson Label, Inc. v. City of Branson,* 793 F.3d 910, 914-15 (8th Cir. 2015); *Osborn,* 918 F.3d at 729.

In a factual attack, the "non-moving party does not have the benefit of 12(b)(6) safeguards." *Croyle v. United States,* 908 F.3d 377, 380 (8th Cir. 2018) (internal quotation marks and citation omitted).   Considering matters outside the pleadings in a factual attack, does not convert the motion to one for summary judgment.   *Moss,* 895 F.3d at 1097 (citation omitted).   Here, the USMS brings its motion to dismiss for lack of jurisdiction as a factual attack.

For factual attacks,

the Rule 12(b)(1) procedure enables the court to resolve a threshold jurisdictional issue without the need for trial, unless the issue is so bound up with the merits that a full trial on the merits may be necessary to resolve the issue.   If the jurisdictional issue is 'bound up' with the merits it remains within the district court's discretion to decide whether to evaluate the evidence under the summary judgment standard.

*Moss,* 895 F.3d at 1097 (internal quotation marks and citations omitted).

**B.  The Motion**

The USMS has filed a Motion to Dismiss first arguing the case is moot because Riemer has now been examined by an orthopedic surgeon and had a CT scan performed.   The USMS maintains Riemer therefore lacks Article III standing.   Second, the USMS argues that Riemer has failed to show he suffered a legal wrong by means of an "agency action" within the meaning of the APA.   Third, the USMS argues the Federal Tort Claims Act has no applicability to this case.[3]

**C.  Consult and CT Scan**

The USMS claims this Court lacks subject matter jurisdiction due to mootness.   It argues it approved Riemer's visit to an orthopedic surgeon and the CT scan which it views as the sole relief sought by Riemer.   In opposition, Riemer argues he did not and does not simply want a consultation with an orthopedic surgeon and a CT scan—instead, he wants his shoulder surgically repaired.

A federal court lacks subject matter jurisdiction if a claim becomes moot.   *Dalton v. JJSC Properties, LLC,* 967 F.3d 909, 913 (8th Cir. 2020) ("A claim is moot when changed circumstances already provide the requested relief and eliminate the need for court action") (internal quotation marks and citation omitted).   "A case becomes moot—and therefore not a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."   *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91 (2012) (internal quotation marks omitted).   "A defendant's voluntary compliance with a plaintiff's demands will moot a case if the defendant shows that 'it is absolutely clear the allegedly wrongful

---

[3] The Court finds it unnecessary to address this issue.   However, the Court notes that Riemer made no argument to support a possible FTCA claim in his response to the Motion to Dismiss.

behavior could not reasonably be expected to recur." *Davis v. Morris-Walker, LTD,* 922 F.3d 868, 870 (8th Cir. 2019) (citing *Already*, 568 U.S. at 91).

The Court agrees with Riemer that the USMS's argument is disingenuous at best.   Riemer wants the shoulder injury to be repaired.   Riemer's claim is not moot.

### D. The APA

Next, while the USMS concedes the APA waives sovereign immunity for cases involving claims for prospective injunctive relief, it maintains no valid APA claim exists in this case.   Here, the USMS contends Riemer has failed to show that he suffered a legal wrong because of agency action.   (ECF No. 37 at 5).

The APA is a procedural statute and "provides no substantive requirements, but merely provides the framework for judicial review of agency action." *Preferred Risk Mut. Ins. Co. v. United States,* 86 F.3d 789, 792 (8th Cir. 1996).   The plaintiff "must identify a substantive statute or regulation that the agency action had transgressed *and* establish that the statute or regulation applies to the United States." *Id.*

Section 702 provides in relevant part, that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."   5 U.S.C. § 702.   This provision has two separate requirements:

> First, the person claiming a right to sue must identify some "agency action" that affects him in the specified fashion; it is judicial relief 'thereof' to which he is entitled.  . . . Second, the party seeking review under § 702 must show he has "suffer[ed] legal wrong" because of the challenged agency action, or is "adversely affected or aggrieved" by that action "within the meaning of a relevant statute."

6

*Lujan v. Nat. Wildlife Fed'n,* 497 U.S. 871, 882-883 (1990).   "Section 706 provides that the reviewing court shall set aside agency action found to be 'arbitrary, capricious, an abuse of discretion, *or otherwise not in accordance with the law*.'"   *Preferred Risk Mut. Ins. Co. v. U.S.,* 86 F.3d 789, 792 (8th Cir. 1996) (quoting 5 U.S.C. § 706(2)(A)) (emphasis in original).

"Agency action" is defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."   5 U.S.C. § 551(13).   "A legal wrong is the invasion of a legally protected right."   *Smith v. U.S. Dep't of Agric.,* 888 F. Supp. 2d 945, 954 (S.D. Iowa 2012).   "[T]o be 'adversely affected or aggrieved . . . within the meaning of a statute,' the plaintiff must establish that the injury he complains of (*his* aggrievement, or the adverse effect *upon him*) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint."   *Lujan,* 497 U.S. at 883 (citing *Clarke v. Sec. Indus. Ass'n.,* 479 U.S. 388, 396-97 (1987)).

Section 702 also contains an express waiver of sovereign immunity for actions in which relief other than money damages is sought.   *Raz v. Lee,* 343 F.3d 936, 938 (8th Cir. 2003).   The waiver extends to injunctive relief actions brought directly under the constitution.   *Id.*

The Court need not delve into this issue further because it appears Riemer has been transferred into the custody of the Bureau of Prisons.   As mentioned earlier, Article III of the Constitution allows the federal courts to consider only cases and controversies.   U.S. Const. art. III, § 2.   "[A] plaintiff seeking relief in federal court must first demonstrate he has standing to do so, including that he has a personal stake in the outcome, distinct from a generally available grievance about government." *Gill v. Whitford,* 585 U.S. 48, 54 (2018) (internal quotation marks and citations omitted).   To establish standing, "[t]he plaintiff must have (1) suffered an injury in

fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision."   *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016).

According to the Bureau of Prison's website, Riemer is now at the United States Penitentiary in Marion, Illinois.   https://www.bop.gov/inmateloc/ (accessed April 12, 2024).[4] His release date is listed as June 24, 2032.   *Id.*   Riemer therefore has no standing with respect to his claim for injunctive relief against the USMS.   The USMS is entitled to dismissal from this action.

### III.   THE MOTION FOR TEMPORARY RESTRAINING ORDER

#### A.   Applicable Standard

In determining whether to grant a temporary restraining order ("TRO"), courts consider the following four factors: (1) the movant's probability or likelihood of success on the merits, (2) the threat of irreparable harm or injury to the movant absent the injunction, (3) the balance between the harm to the movant and the harm that the injunction's issuance would inflict on other interested parties, and (4) whether the issuance of an injunction is in the public interest.[5]   *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); s*ee also Minnesota Mining and Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1307 (8th Cir. 1997);   *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485-86 (8th Cir. 1993).

The Court, moreover, is mindful that "in the prison context, a request for injunctive relief

---

[4] The move must be a recent one as the Court has not received a change of address from Riemer yet.   However, he is no longer shown as being at the Greene County Criminal Justice Center.   https://omsweb.public-safety-cloud.com/jtclientweb/jailtracker/index/Greene_County_MO (accessed April 12, 2024).

[5] Notably, "the standard for analyzing a temporary restraining order is the same as a motion for a preliminary injunction." *Tumey v. Mycroft Al, Inc.* 27 F.4th 657, 665 (8th Cir. 2022) (explaining the material difference between the two is the allowed duration of such an order).

must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (internal quotations omitted). "[T]he burden of establishing the propriety of an injunction is on the movant." *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

### B.   The Motion

In his Motion, Riemer asks that the Court keep Defendant Rex from working in direct contact with him at the WCDC.   With Riemer's transfer out of the WCDC, this Motion became moot.   *See e.g., Martin v. Sargent,* 780 F.2d 1334, 1336 (8th Cir. 1985) (transfer from the facility in which the alleged unconstitutional conduct occurred mooted prisoner's request for injunctive relief).

## IV.   CONCLUSION

For these reasons, it is recommended that:

- The Motion to Dismiss (ECF No. 36) filed by the USMS be **GRANTED** and the USMS be terminated as a Defendant; and

- The Motion for TRO (ECF No. 39) filed by Riemer be **DENIED.**

**Referral Status**:  **This case should remain referred for all matters not recommended for dismissal in this Report and Recommendation.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties**

**are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

  **DATED** this 16th day of April 2024.

           *s/ Christy Comstock*
           _____
           CHRISTY COMSTOCK
           UNITED STATES MAGISTRATE JUDGE