FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
7/21/2026
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

THOMAS MATTHEW RIEMER — PLAINTIFF

v. — Civil No. 5:23-cv-05161-TLB-CDC

SHERIFF JAY CANTRELL, Washington County, Arkansas; DEPUTY CODY REX, Washington County Detention Center; and APRN KELLEY HINELY, Karas Correctional Health — DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Timothy L. Brooks, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court are Defendant Kelley Hinely's Motion for Summary Judgment (ECF No. 144), Brief in Support (ECF No. 145), and Statement of Undisputed Material Facts (ECF No. 146); Plaintiff Thomas Matthew Riemer's Response in Opposition (ECF No. 161); and Defendant Hinely's Reply (ECF No. 174). Also before the Court are Defendants Jay Cantrell's and Cody Rex's Motion for Summary Judgment (ECF No. 148), Brief in Support (ECF No. 149), and Statement of Undisputed Material Facts (ECF No. 150); as well as Plaintiff's Response in Opposition (ECF No. 177), and Statement of Facts Disputed and Undisputed (ECF No. 178). For the reasons given below, the undersigned recommends that both Motions be GRANTED, and that Plaintiff's claims be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

Plaintiff brought this lawsuit regarding events that occurred while he was incarcerated at Washington County Detention Center ("WCDC") in Fayetteville, Arkansas, where he was

awaiting trial on federal criminal charges. He has four remaining claims in this case, all of which relate to an incident that took place on June 1, 2023, and its aftermath.

For Claim 1, Plaintiff alleges that on that day, Defendant Rex (a Sheriff's Deputy employed at WCDC) used excessive force when escorting Plaintiff to an appointment with Defendant Hinely (a nurse at WCDC), twisting Plaintiff's arm behind his back and injuring Plaintiff's shoulder. *See* ECF No. 77, pp. 5–6. That Claim is brought only against Defendant Rex, in his individual capacity. *See id.* For Claim 2, Plaintiff alleges that over the weeks and months following that incident, Defendant Hinely was deliberately indifferent to his medical needs resulting from that injury. *See id.* at 7–8. That Claim is brought only against Defendant Hinely, in her individual capacity. *See id.* at 9. Claim 3 is brought only against Defendant Cantrell (the Sheriff of Washington County), in both his individual and official capacities, alleging that he failed to protect Plaintiff from Defendant Rex. *See id.* at 9–11. And Claim 4 is brought against Defendants Cantrell and Rex, in both their individual and official capacities, alleging that in early December 2003, Defendant Rex intercepted and confiscated material that Plaintiff had attempted to mail for filing in this lawsuit, thereby preventing it from being filed.[1] *See id.* at 12. As relief, Plaintiff is seeking both compensatory and punitive damages from all Defendants. *See id.* at 11.

[1] Claim 4 of Plaintiff's operative pleading also named as defendants various individuals from the Green County, Missouri Sheriff's office, alleging that they also interfered with his legal documents during a period while he was incarcerated with them. *See* ECF No. 77, p. 12. Additionally, he brought a Claim 5 against the United States Marshals Service. *See id.* However, Claim 5 was dismissed, and the portion of Claim 4 brought against Missouri defendants was severed and transferred to the United States District Court for the Western District of Missouri. *See* ECF No. 80. That Court eventually dismissed Plaintiff's complaint against those Missouri defendants on the grounds that it was frivolous and failed to state a claim. *See generally Riemer v. Unknown Greene County Missouri Deputies et al.*, Case No. 6:24-cv-03289-MDH, ECF No. 14 (W.D. Mo. Jan. 13, 2025).

As noted above, Defendant Hinely has filed a Motion for Summary Judgment, and Defendants Cantrell and Rex have jointly filed a separate Motion for Summary Judgment. Both Motions have been fully briefed, and are ripe for decision.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. ANALYSIS

Section 1983 was enacted to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). To assert a claim under

§ 1983, a plaintiff must allege two elements: (1) that the action occurred under color of law; and (2) that the action is a deprivation of a right secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

Defendants argue that they are entitled to qualified immunity from Plaintiff's individual-capacity claims. The qualified immunity inquiry consists of two questions: "(1) whether the facts alleged or shown . . . establish a violation of a constitutional or statutory right, and (2) whether that constitutional right was clearly established as of" the time of the relevant conduct "such that a reasonable official would have known that his actions were unlawful." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009). The Court can answer the questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). A § 1983 plaintiff may defeat qualified immunity only if the answer to both questions is yes. *Krout*, 583 F.3d at 564.

**A. Claim 1 against Defendant Rex for Excessive Force**

The Fourteenth Amendment's Due Process Clause "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014). To show that he suffered a deprivation of this right, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 397. The following non-exclusive list of considerations may bear on the force's reasonableness or lack thereof: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue;

the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *See id.*

Plaintiff alleges in his Second Amended Complaint that on June 1, 2023, while lunch was being served, Defendant Rex announced that Plaintiff was needed outside the A9 Unit. *See* ECF No. 77, p. 5. Plaintiff further alleges that:

> Due to previous times I was called out of the unit taking a long time[,] I replied that I needed to urinate before leaving. After I urinated, I went to my bunk to grab [toilet paper] to wipe the seat. While wiping seat, Cody Rex charged in the Unit and grabbed my left arm and twisted it behind my back and moved me away from the toilet and walked me out of the Unit door. He released my arm when we were outside the Unit, right in front of . . . [Defendant] Kelley Hinely.

*Id.* at 5–6. Elsewhere in the same pleading, Plaintiff elaborates that the reason he was called out of the unit was to meet with Defendant Hinely (a nurse) about a skin problem. *See id.* at 7. Plaintiff claims that Defendant Rex's twisting of his left arm injured his shoulder, causing him pain that lingered for months. *See id.*

Defendants have provided security camera footage from three different angles that collectively document this entire incident. These videos all clearly show that barely any "force" at all was used, at least not in any meaningful sense of the word.

On Defendant Cantrell's and Rex's Ex. C-1, at 2:32, Plaintiff can be seen walking over to the toilet, where he spends a minute and a half urinating. At 4:07, he walks back to his cell, returning to the toilet at 4:30, where he proceeds to wipe down the toilet seat while talking with a correctional officer who has approached him. Then, at 4:40, Defendant Rex approaches and begins speaking with Plaintiff, who is still by the toilet. At 4:45, Rex is seen using his left hand to guide Plaintiff's left arm behind Plaintiff's back; Plaintiff actually begins lifting his left arm and moving it around behind his back before Rex makes contact with that arm. Rex then places his right hand on Plaintiff's right shoulder, while maintaining contact between his left hand and Plaintiff's left arm, and escorts Plaintiff towards the door out of the unit. At no time during this interaction does

Plaintiff appear to be in any physical discomfort or positioned awkwardly, and none of Rex's movements appear sudden or extreme. He simply walks with Plaintiff at a normal pace, maintaining physical contact with him while doing so.

Defendant Cantrell's and Rex's Ex. C-2 picks up where C-1 leaves off, from a different angle. Rex and Plaintiff come into view at 4:51 of C-2, at which time Rex can be seen guiding Plaintiff's right arm around to behind Plaintiff's back, so that Plaintiff is then walking with both hands clasped behind his back. Rex then gently pats Plaintiff on his right shoulder a couple of times, as they approach the unit's door and then exit through it. Here again, although Rex is maintaining physical contact with Plaintiff at all times, they are simply walking together at a normal pace; Plaintiff does not appear to be in any physical discomfort or positioned awkwardly, and none of Rex's movements are sudden or extreme.

Finally, Cantrell's and Rex's Ex. C-3 picks up where C-2 leaves off, immediately outside the unit's door. Here, at 0:06 Plaintiff and Rex are seen coming through the door outside the unit, where Defendant Hinely and various other correctional officers are standing. Rex immediately stops making any physical contact with Plaintiff, but Plaintiff continues standing with both hands holding each other behind his back while he talks with Hinely, until at 0:39 he unfolds his hands to gesture while he speaks and to assist Hinely in examining his skin. At 2:11 their visit concludes, and Plaintiff returns through the door back into the unit. At no point during his interaction with Hinely do any correctional officers make physical contact with Plaintiff.

This security camera footage indisputably shows that the amount of "force" Rex used was objectively reasonable, being the bare minimum necessary to escort Plaintiff out of the unit and to his medical appointment, given that Plaintiff—by his own admission—had not yet left the unit even though he had already been asked by Rex to do so several minutes earlier. No violence was used, and Plaintiff had actually begun lifting and moving his left arm before Rex even made contact

with it; Rex simply maintained physical contact with Plaintiff while they walked out of the unit. To whatever extent Rex's guiding and holding of Plaintiff's arms can be called "twisting," it was not a violent movement, and it was only into a position that is perfectly natural for any anatomically normal person who is walking with his hands holding each other behind his back. Indeed, as noted above, Plaintiff continued to maintain his arms and hands in that position of his own accord during the first thirty seconds of his conversation with Hinely, even though no officers were making any physical contact with him during that period.

The United States Supreme Court has expressly held that when video of the incident in question clearly discredits the plaintiff's version of events such that no reasonable jury could conclude otherwise, summary judgment for the defendant is appropriate. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007). So it is here. It is indisputable that Defendant Rex's use of force was objectively reasonable and thus did not violate Plaintiff's constitutional rights. Accordingly, Defendant Rex is entitled to qualified immunity from Plaintiff's claim for excessive force.

**B. Claim 2 against Defendant Hinely for Deliberate Indifference to Medical Needs**

Plaintiff claims that Defendant Hinely violated his constitutional rights by denying him medical care for the shoulder injury he claims to have suffered at Defendant Rex's hands. To establish a constitutional violation based on deliberate indifference to medical needs, a plaintiff must show that he suffered from an objectively serious medical need and that the defendant had actual knowledge of that need but deliberately disregarded it. *See Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018). "'Deliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Mere negligence in diagnosis or treatment does not rise to

the level of an Eighth Amendment violation, nor does an inmate's mere disagreement with the course of his medical treatment. *See id.*

Defendant Hinely has provided testimony by affidavit and medical records showing that on June 2, 2023, the day after the incident with Defendant Rex, Plaintiff submitted a medical call complaining that he was injured in his left shoulder. *See* ECF No. 146-3, ¶ 7. That same day, Hinely scheduled an x-ray for Plaintiff's shoulder, and another medical employee prescribed Plaintiff ibuprofen. *See id.* at ¶ 8. Hinely also prescribed Plaintiff acetaminophen on June 5. *See id.* at ¶ 11. Although the x-ray had originally been scheduled for June 4, a different medical employee postponed it; so it was eventually conducted on June 7. *See id.* at ¶¶ 9–10. The x-ray image was sent to a radiologist, who reported on June 8 that it showed "no acute fracture or dislocation" with Plaintiff's shoulder. *See id.* at ¶ 10. Plaintiff then requested that a CT or MRI be performed because "[a]n x-ray is an inadequate way to determine soft-tissue damages" such as "torn muscle tissue, or torn rotator cuff." *See id.* at ¶ 12. That same day, Hinely requested permission from the United States Marshals Service ("USMS") to send Plaintiff to an orthopedic consult outside of WCDC, as there was no CT or MRI machine on site. *See id.* at ¶ 13. However, the USMS denied that request, and subsequent requests, until finally approving it on December 18, 2023. *See id.*

On November 20, 2023, Plaintiff stated in a medical call that a blanket Hinely had previously issued him to support his left shoulder on September 19 had "greatly reduced" his need to take Tylenol for pain management, and he requested that it be re-issued to him. *See id.* at ¶ 15. On that same day, the blanket was re-issued to him. *See id.* On November 28, 2023, Plaintiff asked for another Tylenol prescription, which was provided to him on the next day. *See id.* at ¶ 16.

Plaintiff has not disputed the truth of any of these facts. Instead, he simply insists that Hinely somehow nevertheless "purposely ignored" the "severity of the injury . . . for six (6)

months." *See* ECF No. 161, p. 1. The only basis he provides for this assertion is that the USMS initially denied Hinely's request for an orthopedic consult; he argues that "considering Defendant Hinely's many years of experience of working at the WCDC she should be well aware of the information required by the USMS to gain access to appropriate medical care for a detainee." *See id.* at 1–2. Plaintiff does not explain what Defendant Hinely could have or should have done differently. But regardless, as already mentioned, mere negligence in diagnosis or treatment does not rise to the level of an Eighth Amendment violation, nor does an inmate's mere disagreement with the course of his medical treatment. *See Bender*, 385 F.3d at 1137. The evidentiary record leaves no room for dispute that Defendant Hinely consistently gave immediate attention and treatment to Plaintiff's shoulder when it was requested of her during the relevant period. There is no evidence in the record that she deliberately disregarded his medical needs; indeed, the evidence uniformly shows the opposite. Therefore, she is entitled to a finding as a matter of law that she did not violate his constitutional rights, and thus also to qualified immunity on his claim for denial of medical care.

**C. Claim 3 against Defendant Cantrell for Failure to Protect**

Plaintiff has brought a claim against Defendant Sheriff Cantrell in both his individual and official capacities, alleging that Cantrell failed to protect Plaintiff from Rex. There are two fatal problems with this claim. The first is that Cantrell was not present during Plaintiff's June 1, 2023 interaction with Rex: "[g]iven his absence, he could not have used excessive force against the plaintiff[], nor could he have had an opportunity to intervene to prevent the guard[] from using excessive force." *Edwards v. Byrd*, 750 F.3d 728, 733–34 (8th Cir. 2014). Without any personal involvement on Cantrell's part, there is no basis for individual liability against him. *See id.*

But the second, and more fundamental, problem with this claim is that—as discussed in Section III.A above—Plaintiff did not suffer any deprivation of his constitutional rights on June 1,

2023. Because of this, he has no official-capacity claim against Cantrell either. Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). It is possible for a governmental entity to be liable under section 1983 for a constitutional violation even when no government official is found personally liable, when the constitutional violation in question is caused by a "policy" or "custom" of that governmental entity. *See Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998). However, there must still have been a constitutional violation for official-capacity liability to attach. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). The United States Supreme Court has held that damages cannot be awarded "against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." *See id.* Since the undersigned has already recommended finding as a matter of law that Plaintiff suffered no constitutional harm on June 1, 2023, Defendant Cantrell is entitled to summary judgment on Plaintiff's official-capacity claim as well.

**D. Claim 4 against Defendants Cantrell and Rex for Interference with Legal Mail**

Plaintiff's final claim is brought against Defendants Cantrell and Rex, in their individual capacities only, for interfering with his legal mail. Specifically, he alleges that "[a]t WCDC approximately in the first week of December 2023, I mailed a response to Doc. 16, Text Order from this Court, it was confiscated by Defendant Cody Rex in the scope of his employment, and the response was never mailed to this Court." *See* ECF No. 77, p. 12. Here, as with Claim 3, Plaintiff does not provide any evidence, nor even any allegation, that Defendant Cantrell had any personal involvement in, or even knowledge of, this incident. Accordingly, there is no basis for him to be individually liable on this Claim. *See Edwards*, 750 F.3d at 733–34.

As for Defendant Rex: as a general matter, the United States Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a

violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In that case, the Court held that Virginia's common-law remedies would provide adequate compensation to the plaintiff there for his property loss. *See id.* at 534–35. Rex argues that the Arkansas-law action for conversion does the same here. However, Plaintiff clarifies in his Statement of Facts that "this claim is not about 'property' but interfering and tampering with evidence against Defendants and comprising Plaintiff's Due Process rights," which sounds more in the vein of a claim based on interference with the right of access to the courts. *See* ECF No. 178, p. 3.

"To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's . . . conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007). To prove "actual injury," the plaintiff must "demonstrate that a nonfrivolous legal claim ha[s] been frustrated or [is] being impeded." *Id.*

Even if Plaintiff's allegations are true—and he has provided no evidence to support them—Plaintiff was not actually injured by the confiscation of these documents. His alleged inability to file a response to ECF No. 16 did not actually impede his prosecution of this case at all. That Order, entered on November 27, 2023, instructed Plaintiff to provide the Court with additional information about Defendant Rex's identity so that he could be served with a summons and a copy of Plaintiff's Complaint. *See* ECF No. 16. Although Plaintiff missed the initial deadline the Court had imposed for this task, *see* ECF No. 28, he did eventually provide the requested information, *see* ECF No. 29, and Defendant Rex was successfully served, *see* ECF No. 40. Plaintiff was then able to fully prosecute his underlying claim against Defendant Rex; and although the undersigned

is recommending above the Defendant Rex be awarded summary judgment on that count, there is no causal relationship between that outcome and the initial difficulties that transpired when attempting to serve Rex.

One further clarification should be made on that last point. Somewhat confusingly, Plaintiff also contends in his Statement of Facts that the confiscated materials forming the basis of Plaintiff's claim here are "2 witness statements [regarding the June 1, 2023 incident that] were taken from Plaintiff at the Greene County Detention Center in Springfield, MO, Plaintiff believes at the behest of either Defendant Rex or Cantrell." *See* ECF No. 178, p. 3. Here again, Plaintiff has not provided any evidence at all to support his belief that this was done at these Defendants' behest. Furthermore, Plaintiff appears to be conflating that portion of his Claim 4 which was severed and transferred to the Western District of Missouri (and ultimately dismissed by that Court, as discussed in footnote 1, above) with that portion which was not. *Compare* ECF No. 77, p. 12, *with* ECF No. 80. But regardless, he cannot show actual injury here either, because—as was extensively discussed in Section III.A above—the video footage of the incident in question clearly discredits Plaintiff's version of events. If these witness statements had been submitted to the Court, then to whatever extent they were inconsistent with the security camera footage of the incident, Supreme Court precedent would require that they not be given credence because "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 378–81 (2007). So, for each of the aforementioned independent reasons, Defendants Cantrell and Rex are entitled to qualified immunity on Claim 4 at summary judgment.

## IV. CONCLUSION

Accordingly, it is recommended that Defendant Kelley Hinely's Motion for Summary Judgment (ECF No. 144) and Defendants Jay Cantrell's and Cody Rex's Motion for Summary Judgment (ECF No. 148) both be GRANTED, and that Plaintiff Thomas Matthew Riemer's claims against these Defendants be DISMISSED WITH PREJUDICE. As this would resolve all remaining claims in this matter, it is further recommended that final judgment be entered.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **21st day of July 2026**.

/s/ *Christy Comstock*

HON. CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE